Jesse Cowell, OSB No. 082940
Southwest Portland Law Group, LLC
8455 SW Beaverton Hillsdale Highway
Portland, OR 97225
Tel: (503) 206-6401
Fax: (503) 214-8962
jesse@swpdxlaw.com
Attorney for Plaintiff, Betsy Goren, on
behalf of the Estate of Marjorie Goren

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| BETSY GOREN, on behalf of the Estate of Marjorie Goren, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | (Conversion; Unjust Enrichment; Negligence; Oregon Unlawful Trade Practices Act Violations; Breach of Contract; Breach of Implied Warranty; Fraudulent Inducement; Promissory Fraud; Negligent Misrtepresentation; Financial Elder Abuse) |
| SMA HUB, INC., HUB BUSINESS TRUST, NV PARTNERS, LLC, JONATHAN WALKER, and NORTHWEST BANK, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Betsy Goren ("Plaintiff" or "Betsy"), on behalf of the Estate of Marjorie Goren makes the

following complaint against Defendants SMA Hub, Inc., Hub Business Trust, NV Partners, LLC,

Jonathan Walker, (collectively, SMA Hub, Inc., Hub Business Trust, NV Partners, LLC, and

Jonathan Walker are referred to hereafter as the "SMA Defendants"), and Northwest Bank

(collectively, the SMA Defendants and Northwest Bank are referred to hereafter as

"Defendants"), as follows:

**Page 1 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

**PARTIES**

1.

At all relevant times, Plaintiff Betsy Goren has been a resident of the Commonwealth of Massachusetts. At all relevant times, Plaintiff has served as either the power of attorney for her elderly mother, Marjorie Goren ("Marjorie"), or as Executrix for the estate of Marjorie Goren, who was also a resident of the Commonwealth of Massachusetts until she died in 2022.

2.

Defendant SMA Hub, Inc. ("SMA Hub"), based in Lake Oswego, Oregon, was an Oregon corporation that did business nationwide, including in the Commonwealth of Massachusetts. SMA Hub was in the business of acting as a "wholesale distributor of secondary market annuities."

3.

Defendant Hub Business Trust was a trust based in Beaverton, Oregon, that did business nationwide, including in the Commonwealth of Massachusetts. Hub Business Trust was affiliated with SMA Hub and involved with the distribution and sale of secondary market annuities to investors such as Marjorie.

4.

Defendant NV Partners, LLC ("NV Partners") is an Oregon limited liability company based in Beaverton, Oregon, that does business nationwide, including in the Commonwealth of Massachusetts. At all relevant times, NV Partners was trustee for the Hub Business Trust.

5.

Defendant Jonathan Walker ("Walker"), a resident of Oregon, was the President of SMA Hub and Hub Business Trust, as well as the Manager of NV Partners.

6.

Defendant Northwest Bank is an Idaho corporation with offices in Lake Oswego, Oregon. Northwest Bank served as the bank for one or more of the SMA Defendants and for investors

**Page 2 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

across the country, including Plaintiff in the Commonwealth of Massachusetts, who would transfer and deposit their investment funds with Northwest Bank when purchasing a secondary annuity through the SMA Defendants.

## JURISDICTION & VENUE

### 7.

This Court has jurisdiction pursuant to 28 USC §1332(a)(1), given the complete diversity of citizenship between Plaintiff and Defendants and the fact that more than $75,000 is at stake.

### 8.

Venue is proper with this Court because the acts and omissions of Defendants occurred in the District of Oregon, within the area usually administered by the Portland Division.

## COMMON FACTS

### 9.

In the spring of 2020, Plaintiff had the power of attorney on behalf of her elderly and ill mother, Marjorie Goren, who was retired and in her 80s.

### 10.

Based on the advice and solicitation of Jill Goldman ("Goldman"), a registered broker in the Commonwealth of Massachusetts and President of Goldman & Associates Insurance Financial Services, Inc., Betsy agreed to invest, on behalf of Marjorie, approximately $400,000 of Marjorie's funds in a secondary market annuity from the SMA Defendants.

### 11.

Goldman worked closely with the SMA Defendants for purposes of marketing and soliciting client investment in the "secondary market annuities" products distributed by the SMA Defendants.

### 12.

Goldman told Betsy that the SMA Defendants had a contract with an individual named Brian Sand ("Sand") to make an up-front payment to Sand, in exchange for which he would

**Page 3 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

assign to the SMA Defendants and/or their affiliates Sand's rights to receive future monthly payments under certain annuities from UNUM Life. As Goldman explained to Plaintiff, a threefold process would take place: a) Marjorie's funds would be paid to the SMA Defendants and/or their affiliates, which funds would b) be used by the SMA Defendants and/or their affiliates as part of a larger lump sum up-front payment they made to Sand, and then c) the SMA Defendants and/or their affiliates would take the assigned monthly payments they received from Sand under the annuity and pay a portion of those back to Plaintiff on Marjorie's behalf each month. Based on the SMA Defendants' representations, Goldman promised that Marjorie would earn a "guaranteed" rate of 4% on this product and that Marjorie would be paid back approximately $4,000 a month over the next ten years pursuant to a "payout schedule" which Goldman provided to Betsy.

13.

Prior to Goldman's discussions with Betsy about the possibility of Marjorie investing with the SMA Defendants, SMA Hub, through its affiliated company NV Partners, had commenced litigation in or about 2019 against the retired professional football player Michael Vick ("Vick") relating to a transaction which had fallen apart in 2019, albeit similar to the Sand transaction. Specifically, NV Partners, through Jonathan Walker, had entered a transaction with Vick in which Vick received an immediate cash payment of $400,000 in September 2018 in exchange for promising to have up to three years of his future earnings rerouted from two of Vick's employers to NV Partners.

14.

On information and belief, the Vick transaction was like the Sand transaction. In the Vick transaction, SMA Hub and its agents solicited investors like Betsy and Marjorie, whose money would be paid to SMA Hub and its affiliates, and then used by SMA Hub and its affiliates as part of a larger, lump sum up-front payment they made to Vick. Then, SMA Hub and its affiliates would take the assigned monthly payments received from Vick and pay a portion back to

**Page 4 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

investors each month. By January 2019, however, Vick had defaulted on the deal and NV

Partners commenced litigation against him in Maryland state court in July 2019. That litigation,

which Plaintiff later discovered had been reported in the Washington Post in August 2019,

presented a glaring red flag which Defendants knew or should have known about prior to

Marjorie's investment in 2020. Based on the failed Vick deal, the SMA Defendants should have

conducted further due diligence into the particular "secondary market annuity" offered to

Marjorie through Goldman, and then disclosed and relayed to Betsy, through Goldman, the

extremely high risks associated with investing with the SMA Defendants given the failed Vick

deal. Likewise, the public reporting and litigation involving the SMA Defendants should have

alerted a sophisticated banking institution like Northwest Bank to the risks of doing business

with the SMA Defendants.

15.

At no time was any information regarding risks associated with investing with the SMA

Defendants relayed to Plaintiff.

16.

Prior to Plaintiff's investment, the SMA Defendants provided Goldman with an SMA

Hub document entitled "*Secondary Market Annuities: The SMA Hub Buyer's Guide*" ("SMA

Hub Buyer's Guide"). Also prior to Plaintiff's investment, Goldman provided Betsy with a copy

the SMA Hub Buyer's Guide, which was replete with misrepresentations and reckless and/or

false representations, including without limitation the following:

   a. "Congratulations! You're working with an agent who takes the safety of your funds

      very seriously."

   b. "SMA Hub… offer[s] certainty to advisors and quick closing and high returns for

      their clients. SMA Hub exists to serve advisors and their clients, processing cases in a

      manner that protects end purchasers to the highest degree."

   c. "Secondary Market Annuities offer fixed-term payment streams from top quality

**Page 5 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

insurance carriers, and also come with yields that are typically one to four percent higher than comparable assets. SMAs offer all the benefits of a primary market, period-certain, guaranteed annuity — while offering higher returns with the same low risk."

d. "**SMA Hub's <u>internal legal department</u> reviews all of the supporting documentation to ensure the payment stream is conveyed to you absolutely and irrevocably**." (Emphasis added).

e. "After SMA Hub has **completed its <u>legal review</u> of the case**, a Closing Book will be prepared and sent electronically to your advisor." (Emphasis added).

f. "With every case, Hub Business Trust acts as the principal buyer and commits its capital to buy each SMA before it is listed in inventory. Our Trust puts its capital on the line before anyone reserves the SMA for purchase, so we have a deeply vested interest in making sure the payment stream is transferred fully and completely."

17.

The SMA Hub Buyer's Guide devoted an entire page to addressing the question "How Safe Are My Payments?" The SMA Hub Buyer's Guide also falsely represented that "Your Safety is our Priority," stating:

> **United States contract law protects you to the fullest**. When you and Hub Business Trust execute the Irrevocable Assignment of Cash Flows, all rights and title to the payment stream are passed from the Trust to you. As of that moment, Hub Business Trust has no ownership interest in the cash flows going forward. When payments commence, they are sent directly from the insurance carrier to GoldStarTrust Company for servicing, with no involvement from Hub Business trust.
>
> Subsequent actions of Hub Business Trust or SMA Hub have no effect on the payment streams irrevocably assigned by us to you. Once sold, they are legally no longer the property of SMA Hub, and creditors and additional parties have no claim to the payments.
>
> GoldStarTrust Company is a contracted payment agent. It may receive funds from insurance carriers, but must account for all funds and is subject to our Irrevocable Assignment of Cash Flows. While GoldStarTrust Company takes possession of each payment briefly to verify the amount and payee, at no time does GoldStarTrust Company have legal ownership of the funds.

**Page 6 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

In the unlikely event that a creditor of GoldStarTrust Company ever attempted to foreclose on the assets of Gold Star Trust Company, **your payments remain safe**.

(Emphasis added).

18.

Based on the foregoing misrepresentations from the SMA Defendants, Plaintiff invested approximately $400,000 of Marjorie's funds through Goldman with SMA Hub in April 2020. Specifically, Betsy delivered to Goldman a check dated April 17, 2020, and made out to "Hub Business Trust," in the amount of $396,917.65, which Goldman then provided to the SMA Defendants. The check was deposited by the SMA Defendants in a Northwest Bank branch location in Lake Oswego, Oregon, on April 21, 2020.

19.

Plaintiff never received a single payment on the foregoing "secondary market annuity." When Betsy pressed Goldman to explain what was happening in the months after making the investment, she learned from Goldman that, contrary to Goldman's prior representations, the contract between the SMA Defendants and Sand had never been finalized, the rights to the monthly annuity payments had never been assigned by Sand to the SMA Defendants or their affiliates, and neither the SMA Defendants nor their affiliates had ever made a lump sum payment to Sand. Yet the SMA Defendants took Marjorie's $400,000 payment and, despite repeated requests, have not returned the money to Plaintiff.

20.

The SMA Defendants later admitted that Marjorie's $400,000 investment had been commingled with the funds of other SMA Defendants within a Hub Business Trust account at Northwest Bank ("HBT Account"). According to Walker, Northwest Bank simply took all the HBT Account funds without authorization by the SMA Defendants.

21.

Northwest Bank provided banking services to the SMA Defendants for several years before converting Marjorie's investment, including Northwest Bank's provision of both an

**Page 7 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

operating/expense account to the SMA Defendants and the separate HBT Account. Upon information and belief, the SMA Defendants understood the HBT Account to be a trust account with legal protections for client trust funds like Plaintiff's. The SMA Defendants' counsel, Theodore Broberg ("Broberg"), had originally set up both accounts with Northwest Bank.

22.

Northwest Bank has refused to return any of the converted funds from Marjorie's investment to the SMA Defendants or Plaintiff.

23.

One or more Defendants knowingly allowed Marjorie's investment funds to be improperly deposited into the HBT Account, paving the way for Northwest Bank to convert all of Marjorie's investment funds.

24.

Contrary to representations in the SMA Hub Buyer's Guide, none of the Defendants acted in a manner to protect Marjorie's investment funds to the "highest degree," nor did they provide Marjorie a "low risk" product with "high returns" or "ensure the payment stream [was] conveyed to [Marjorie] absolutely and irrevocably." On information and belief, the SMA Defendants' "internal legal department" responsible for reviewing all client documentation to ensure the outcomes promised in the SMA Hub Buyer's Guide consisted entirely of Broberg as the SMA Defendants' counsel.

25.

As stated in the SMA Hub Buyer's Guide, Marjorie's funds were not supposed to be transferred to Hub Business Trust until after Plaintiff received a Closing Book that included various documents, including an "Irrevocable Assignment of Cash Flows." Neither Betsy nor Marjorie ever received or signed an Irrevocable Assignment of Cash Flows for this secondary market annuity, but the SMA Defendants instructed Betsy to transfer approximately $400,000 of Marjorie's investment funds to Hub Business Trust anyway.

**Page 8 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

26.

The SMA Defendants continued to make misrepresentations to Betsy, and to her brothers Tom and Dave Goren, regarding their mother's investment even after the deal fell apart. In numerous oral and written communications between and among Betsy, her brothers, Goldman and Walker since the investment failed, the SMA Defendants promised Betsy and her brothers that the situation would be resolved and that money would supposedly be coming soon, either through settlement of the dispute between the SMA Defendants and Sand, or from other deals which would purportedly bring money to the SMA Defendants and then supposedly be used to repay Marjorie. None of that ever transpired.

27.

The product at issue in this case, like any so-called "secondary market annuity," is not an insurance product because it is not a contract between an insurance company and an insured. SMA Hub is not an insurance company, and Marjorie was not their insured, such that the agreement between them was not an insurance contract.

28.

Marjorie's investment with SMA Hub was an "investment contract" between the SMA Defendants and Plaintiff and is a security, particularly where, as here, the investment is marketed by a securities broker such as Goldman, who expressly referred to the SMA Hub transaction as an "investment."

## FIRST CLAIM FOR RELIEF

### (Conversion)

29.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

30.

Defendants intentionally exercised dominion or control over Marjorie's funds, which manner of exercise constituted a breach of trust with Plaintiff.

**Page 9 –** COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

31.

Defendants' exercise of dominion or control over Marjorie's funds has seriously interfered with Plaintiff's right of control over Marjorie's funds.

32.

Justice requires that Defendants pay Plaintiff the full value of Marjorie's investment funds converted by Defendants.

## SECOND CLAIM FOR RELIEF

### (Unjust Enrichment)

33.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

34.

Defendants have been unjustly enriched by receiving and keeping all of Marjorie's funds paid by Plaintiff, given Defendants' failure to provide any returns on Marjorie's investment or reimbursement of Marjorie's funds.

35.

It would be grossly unjust and inequitable to allow Defendants to further retain any of Marjorie's funds paid by Plaintiff.

36.

Plaintiff is entitled to reimbursement or restitution of the full value of Marjorie's investment funds paid to and received by Defendants and by which Defendants have been unjustly enriched.

## THIRD CLAIM FOR RELIEF

### (Negligence)

### (Count I – SMA Defendants)

37.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

**Page 10 –** COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

38.

The SMA Defendants were responsible for all aspects of Marjorie's investment, including the safekeeping of Marjorie's funds, pursuant to the investment contract between Plaintiff and the SMA Defendants.

39.

The SMA Defendants owed a duty to Plaintiff to safeguard Marjorie's investment funds in a professional manner and in accordance with applicable industry standards. As the President of SMA Hub and Hub Business Trust, as well as the Manager of NV Partners, Walker was particularly responsible for exercising management and/or supervisory authority over Marjorie's funds.

40.

The SMA Defendants owed Plaintiff, as a potential future plaintiff, a duty to use reasonable care in the handling of Marjorie's funds in a non-negligent manner. The SMA Defendants breached their duty by negligently failing to perform as required under any applicable investment contract terms, implied warranty, industry standards, and/or applicable federal or state securities law, thereby causing damages to Plaintiff.

41.

The SMA Defendants, and Walker particularly, were negligent as set forth in the foregoing paragraphs and in one or more of the following particulars:

a.  Dereliction of duties by failing to exercise management authority over Marjorie's funds;

b.  Dereliction of duties by failing to exercise supervisory authority over Marjorie's funds; and

c.  Failing to exercise reasonable care in the handling of Marjorie's funds pursuant to the investment contract between the SMA Defendants and Plaintiff, implied warranty, industry standards, and/or applicable federal or state securities law

**Page 11 –** COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

42.

As longtime marketers and handlers of investment contracts like the one entered with Plaintiff, the SMA Defendants knew or, in the exercise of reasonable care, should have known based on the experience, education, and training of the SMA Defendants and their in-house counsel that, if the SMA Defendants performed their duties negligently, there was a foreseeable risk that Plaintiff, as foreseeable plaintiff, would suffer damages.

43.

As a direct and proximate result of the SMA Defendants' negligence, Plaintiff has suffered damages in an amount not less than the full value of Marjorie's investment funds.

**(Count II – Northwest Bank)**

44.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

45.

Northwest Bank was responsible for safeguarding the client trust funds deposited by the SMA Defendants into the HBT Account, including Marjorie's investment.

46.

Northwest Bank owed a duty to Plaintiff to safeguard Marjorie's investment funds in a professional manner and in accordance with applicable industry standards.

47.

Northwest Bank owed Plaintiff, as a potential future plaintiff, a duty to use reasonable care in the safekeeping of Marjorie's funds in a non-negligent manner. Northwest Bank breached its duty by negligently failing to perform as required under any applicable industry standards, implied contract, and/or federal or state law, thereby causing damages to Plaintiff.

48.

Northwest Bank was negligent as set forth in the foregoing paragraphs and in one or more of the following particulars:

**Page 12 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

a. Dereliction of duties by failing to exercise management authority over Marjorie's funds;

b. Dereliction of duties by failing to exercise supervisory authority over Marjorie's funds; and

c. Failing to exercise reasonable care in the safekeeping of Marjorie's funds pursuant to applicable industry standards, implied contract duties, and/or federal or state law.

49.

As a regulated bank and licensed corporation, Northwest Bank knew or, in the exercise of reasonable care, should have known based on the experience, education, and training of Northwest Bank personnel that, if Northwest Bank performed its duties negligently, there was a foreseeable risk that Plaintiff, as foreseeable plaintiff, would suffer damages.

50.

As a direct and proximate result of Northwest Bank's negligence, Plaintiff has suffered damages in an amount not less than the full value of Marjorie's investment funds.

**FOURTH CLAIM FOR RELIEF**

**(Oregon Unlawful Trade Practices Act ("UTPA") Violations)**

**(Count I – SMA Defendants)**

51.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

52.

The SMA Defendants violated the UTPA pursuant to ORS 646.608(1) as set forth in the foregoing paragraphs and in one or more of the following particulars:

a. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of investment goods or services;

b. Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, one or more participants or necessary parties

**Page 13 –** COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

to the investment contract with Plaintiff, including Sand and Northwest Bank;

c.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have;

d.  Representing that the goods or services are of a particular standard, quality, or grade not consistent with the actual standard, quality, or grade of the goods or services;

e.  Advertising goods or services with intent not to provide the goods or services as advertised;

f.  Promising to deliver goods or services within a certain period of time with intent not to deliver the goods or services as promised;

g.  Making false or misleading representations of fact concerning the investor client's cost for goods or services; and

h.  Engaging in unfair or deceptive conduct in trade or commerce.

53.

Pursuant to ORS 646.638(1), Plaintiff is entitled to economic damages for the SMA Defendants' UTPA violations in an amount not less than the full value of Marjorie's investment funds.

54.

Pursuant to ORS 646.638(1), Plaintiff is also eligible for noneconomic damages for the SMA Defendants' UTPA violations, due to suffering actual damages through severe emotional and mental pain, suffering, and distress, in an amount estimated at $50,000.

55.

The SMA Defendants are also potentially liable for punitive damages for their UTPA violations pursuant to ORS 646.638(1). Plaintiff hereby provides notice of her intent to potentially move to add punitive damages against the SMA Defendants at any time hereafter for

**Page 14 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

reasons of the SMA Defendants' reckless, grossly negligent, outrageous, and/or intentional conduct committed against Plaintiff in lack of good faith.

56.

Pursuant to ORS 646.638(3), Plaintiff is also entitled to attorney fees and costs for the SMA Defendants' UTPA violations.

**(Count II – Northwest Bank)**

57.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

58.

Northwest Bank violated the UTPA pursuant to ORS 646.608(1) as set forth in the foregoing paragraphs and in one or more of the following particulars:

    a.   Representing that banking and trust accounting services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have;

    b.   Representing that banking and trust accounting services are of a particular standard, quality, or grade not consistent with the actual standard, quality, or grade of the services; and

    c.   Engaging in unfair or deceptive conduct in trade or commerce.

59.

Pursuant to ORS 646.638(1), Plaintiff is entitled to economic damages for Northwest Bank's UTPA violations in an amount not less than the full value of Marjorie's investment funds.

60.

Pursuant to ORS 646.638(1), Plaintiff is also eligible for noneconomic damages for Northwest Bank's UTPA violations, due to suffering actual damages through severe emotional

**Page 15** – COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

and mental pain, suffering, and distress, in an amount estimated at $50,000.

61.

Pursuant to ORS 646.638(3), Plaintiff is also entitled to attorney fees and costs for Northwest Bank's UTPA violations.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

62.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

63.

The SMA Defendants failed to perform their fair, just, and reasonable obligations under the terms of the investment contract between the parties and materially breached the contract between the parties as set forth in the foregoing paragraphs and in at least the following particulars:

    a.  By failing to provide any return-on-investment payments to Plaintiff;

    b.  By failing to safeguard Marjorie's funds; and

    c.  By converting and/or otherwise losing Marjorie's funds.

64.

As a direct result of the SMA Defendants' breach of contract, Plaintiff has suffered economic damages in an amount not less than the full value of Marjorie's investment funds.

## SIXTH CLAIM FOR RELIEF

### (Breach of Implied Warranty)

65.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

66.

By entering the investment contract with Plaintiff and accepting Marjorie's funds, the

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

SMA Defendants impliedly warranted that the funds would be reasonably safeguarded in a professional manner and that investment returns would be provided to Plaintiff.

67.

The SMA Defendants breached this warranty by allowing Marjorie's investment funds to be commingled, converted, or otherwise lost, as described in the foregoing paragraphs, without ever providing any returns to Plaintiff on the investment.

68.

As a direct result of the SMA Defendants' breach of warranty, Plaintiff has suffered economic damages in an amount not less than the full value of Marjorie's investment funds.

**SEVENTH CLAIM FOR RELIEF**

**(Fraudulent Inducement)**

69.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

70.

Plaintiff was induced to enter the investment contract and deposit Marjorie's funds with the SMA Defendants, especially through the promises and representations made in the SMA Hub Buyer's Guide provided to Plaintiff.

71.

The promises and representations within the SMA Hub Buyer's Guide were intentionally made by the SMA Defendants to prospective investor clients like Plaintiff.

72.

The SMA Defendants made material misrepresentation and knowingly false or reckless promises to Plaintiff through the SMA Hub Buyer's Guide.

73.

As a direct result of the SMA Defendants' fraudulent inducement, Plaintiff has suffered economic damages in an amount not less than the full value of Marjorie's investment funds.

**Page 17 –** COMPLAINT

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

**EIGHTH CLAIM FOR RELIEF**

**(Promissory Fraud)**

74.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

75.

The SMA Defendants failed to keep their promises within the investment contract to Plaintiff, including by means of the breaches of contract by SMA Defendants identified in paragraph 63 above.

76.

The SMA Defendants did not intend to perform their promises within the investment contract to Plaintiff and/or made those promises with a reckless disregard to whether the SMA Defendants could perform their promises.

77.

The SMA Defendants made material misrepresentation and knowingly false or reckless promises to Plaintiff through the SMA Hub Buyer's Guide.

78.

As a direct result of the SMA Defendants' promissory fraud, Plaintiff has suffered economic damages in an amount not less than the full value of Marjorie's investment funds.

**NINTH CLAIM FOR RELIEF**

**(Negligent Misrepresentation)**

79.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

80.

The SMA Defendants created and distributed the SMA Hub Buyer's Guide and maintained solicitation and marketing relationships with brokers like Goldman for purposes of

**Page 18 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

inducing prospective clients like Plaintiff to enter investment contracts with the SMA
Defendants.

81.

The SMA Hub Buyer's Guide representations and other marketing information supplied
by the SMA Defendants to prospective clients like Plaintiffs were false.

82.

The SMA Hub Buyer's Guide representations and other marketing information supplied
by the SMA Defendants to prospective clients like Plaintiffs were intentionally offered for
purposes of guidance in investment transactions.

83.

The false representations and information supplied by the SMA Defendants induced
Plaintiff to enter an investment contract with the SMA Defendants and resulted in the loss of all
Marjorie's invested funds.

84.

Plaintiff justifiably relied on the representations and information supplied by the SMA
Defendants, especially since the SMA Hub Buyer's Guide contained repeated assurances of legal
review and oversight regarding the handling of client contracts and funds.

85.

The SMA Defendants failed to exercise reasonable care in obtaining or providing the
information within the SMA Hub Buyer's Guide and/or representations supplied to brokers like
Goldman for purposes of marketing the SMA Defendants' investment offerings to prospective
clients like Plaintiff.

86.

As a direct result of the SMA Defendants' negligent misrepresentation, Plaintiff has
suffered economic damages in an amount not less than the full value of Marjorie's investment
funds.

**Page 19 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

## TENTH CLAIM FOR RELIEF

### (Financial Elder Abuse)

87.

Plaintiff incorporates by reference and re-alleges paragraphs 1 through 28.

88.

At all relevant times, Marjorie was over 65 years of age, while Besty turned 65 on December 13, 2021, thereby qualifying both as vulnerable people pursuant to ORS 124.100(1).

89.

The SMA Defendants wrongfully took or appropriated Marjorie's funds paid by Plaintiff.

90.

After Plaintiff requested that the SMA Defendants return Marjorie's funds, the SMA Defendants continued to hold Marjorie's funds. To date, the SMA Defendants have failed to return any portion of Marjorie's funds to Plaintiff.

91.

The SMA Defendants have acted in bad faith and failed to take reasonable steps to recover and/or make Marjorie's funds available to Plaintiff, including without limitation:

a. Filing a conversion claim against Northwest Bank for taking Marjorie's funds improperly from the HBT Account;

b. Filing a legal malpractice against Broberg for failing to properly establish the HBT Account with Northwest Bank, such that client deposits like Marjorie's funds would be properly held in trust and safeguarded from Northwest Bank claims; and/or

c. Alerting the Oregon Professional Liability Fund ("PLF") to legal malpractice by Broberg, such that PLF coverage could be used to reimburse Plaintiff.

92.

Plaintiff has suffered economic damages due to the SMA Defendants' actions and/or failures to act in an amount not less than the full value of Marjorie's investment funds, which

**Page 20 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

damages are recoverable by Plaintiff as an actionable instance of financial abuse pursuant to ORS 124.110(1).

93.

Pursuant to ORS 124.100(2)(a), Plaintiff is entitled to an award of three times her economic damages due to the SMA Defendants' financial abuse.

94.

Pursuant to ORS 124.100(2)(b), Plaintiff is entitled to an award of three times her noneconomic damages for injuries or damages suffered from the SMA Defendants' financial abuse, or approximately $150,000.

95.

Pursuant to ORS 124.100(2)(c), Plaintiff is entitled to an award of her reasonable attorney fees incurred from the SMA Defendants' financial abuse.

**WHEREFORE**, Plaintiff prays for judgment of this Court:

1. On the First Claim for Relief against Defendants for conversion, awarding Plaintiff the full value of Marjorie's investment funds converted by Defendants, in an amount not less than $396,917.65.

2. Alternatively, on the Second Claim for Relief against Defendants for unjust enrichment, awarding Plaintiff reimbursement or restitution in an amount not less than $396,917.65.

3. Alternatively, on the Third Claim for Relief, awarding Plaintiff damages for negligence in an amount not less than $396,917.65 against:

   a. The SMA Defendants, pursuant to Count I; or

   b. Northwest Bank, pursuant to Count II.

4. On the Fourth Claim for Relief regarding UTPA violations, awarding Plaintiff:

   a. Pursuant to Count I against the SMA Defendants:

      i. In the alternative, economic damages pursuant to ORS 646.638(1) in an amount not less than $396,917.65;

**Page 21 – COMPLAINT**

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

       ii.   Noneconomic damages in an amount to be determined at trial, estimated at $50,000;

       iii.   Potential punitive damages pursuant to ORS 646.638(1); and

       iv.   Attorney fees and costs, pursuant to ORS 646.638(3).

   b.   Pursuant to Count II against Northwest Bank:

       i.   In the alternative, economic damages pursuant to ORS 646.638(1) in an amount not less than $396,917.65;

       ii.   Noneconomic damages in an amount to be determined at trial, estimated at $50,000; and

       iii.   Attorney fees and costs, pursuant to ORS 646.638

5. Alternatively, on the Fifth Claim for Relief against the SMA Defendants for breach of contract, awarding Plaintiff damages in an amount not less than $396,917.65.

6. Alternatively, on the Sixth Claim for Relief against the SMA Defendants for breach of implied warranty, awarding Plaintiff damages in an amount not less than $396,917.65.

7. Alternatively, on the Seventh Claim for Relief against the SMA Defendants for fraudulent inducement, awarding Plaintiff damages in an amount not less than $396,917.65.

8. Alternatively, on the Eighth Claim for Relief against the SMA Defendants for promissory fraud, awarding Plaintiff damages in an amount not less than $396,917.65.

9. Alternatively, on the Ninth Claim for Relief, against the SMA Defendants for negligent misrepresentation, awarding Plaintiff damages in an amount not less than $396,917.65.

10. On the Tenth Claim for Relief against the SMA Defendants for financial elder abuse, awarding Plaintiffs:

   a.   Pursuant to ORS 124.100(2)(a), treble economic damages in an amount not less than $1,190,752.95;

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962

    b.   Pursuant to ORS 124.100(2)(b), treble noneconomic damages in an amount to be determined at trial, estimated at $150,000; and

    c.   Attorney fees and costs, pursuant to 124.100(2)(c).

11. Awarding interest on damages and/or restitution at the rate of 9% per annum until paid, as applicable.

12. Granting such other and further relief as may be just, equitable, or proper.

DATED this 5th day of April, 2024.

<u>s/ Jesse Cowell</u>
Jesse Cowell, OSB No. 082940
Southwest Portland Law Group, LLC
8455 SW Beaverton-Hillsdale Hwy
Portland, OR 97225
Tel: (503) 206-6401
Fax: (503) 214-8962
jesse@swpdxlaw.com
Attorney for Plaintiff

SOUTHWEST PORTLAND
LAW GROUP, LLC
8455 SW Beaverton-Hillsdale Hwy.
Portland, OR 97225
Phone: (503) 206-6401
Fax: (503) 214-8962